UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

T. RONALD THEODORE,
    Plaintiff,

    v.                                              CIVIL ACTION NO.
                                                12-10863-PBS
U.S DEPARTMENT OF JUSTICE
and FEDERAL BUREAU OF
PRISONS,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**(DOCKET ENTRY # 14)**

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**
**(DOCKET ENTRY # 19); PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**CERTIFICATE OF MERIT (DOCKET ENTRY # 25)**

**August 6, 2013**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss for failure to state a claim (Docket Entry # 14) filed by defendants United States Department of Justice and the Federal Bureau of Prisons ("defendants") under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)").  Also pending before this court are a motion for leave to amend the complaint (Docket Entry # 19) and a motion for leave to file a certificate of merit (Docket Entry #

25) filed by plaintiff T. Ronald Theodore ("plaintiff") under

Rule 15(a)(2), Fed. R. Civ. P. ("Rule 15(a)(2)").[1]

PROCEDURAL BACKGROUND

Prior to filing the pending motion to amend (Docket Entry #

19), plaintiff, who is proceeding pro se, filed a document

captioned "first amendment to complaint" (Docket Entry # 11).

Plaintiff filed the original complaint (Docket Entry # 1) and a

supplement to the complaint (Docket Entry # 3) prior to service

of the complaint on defendants.[2]  Because plaintiff is proceeding

pro se, this court will construe the supplement (Docket Entry #

3) as part of the original complaint (Docket Entry # 1).

Defendants' motion to dismiss (Docket Entry # 14) considers and

addresses the original complaint (Docker Entry # 1), the

supplement (Docket Entry # 3) and the proposed claims in the

motion to amend (Docket Entry # 11).  The motion to amend

(Docket Entry # 11) consists of four paragraphs.  Paragraphs

one, two and four set out a proposed Bivens[3] claim alleging a

deliberate indifference to medical care.  Paragraphs one and

---

[1]  A magistrate judge has "the authority to decide the motion to amend outright" under 28 U.S.C. § 636(b)(1)(A).  Maurice v. State Farm Mutual Automobile Insurance Co., 235 F.3d 7, 9 n.2 (1st Cir. 2000) (referring to motion for leave to file amended complaint to add new count).

[2]  The supplement consists of a number of documents plaintiff submitted during the course of exhausting his administrative remedies.

[3]  Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens").

2

three set out a proposed <u>Bivens</u> claim alleging retaliation.   The
motion to amend (Docket Entry # 11) is allowed.

Although ordinarily an amended complaint supersedes an
original complaint, <u>see</u> <u>Snyder v. Pascack Valley Hospital</u>, 303
F.3d 271, 276 (3rd Cir. 2002) ("amended complaint supersedes the
original version in providing the blueprint for the future
course of the litigation"), plaintiff is proceeding pro se.
Accordingly, the operative complaint shall consist of the
amended complaint (Docket Entry # 11) incorporating the entirety
of the original complaint and the supplement.   The complaint
(Docket Entry ## 1, 3 & 11) distills into four claims.   It
raises the following two <u>Bivens</u> claims:   (1) deliberate
indifference to medical care; and (2) retaliation.   (Docket
Entry # 11).   The complaint also sets two claims under the
Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA"):   (1)
negligence; and (2) medical malpractice.   (Docket Entry ## 1 &
3).

<u>STANDARD OF REVIEW</u>

When considering a motion to dismiss pursuant to Rule
12(b)(6), a court "accept[s] as true all well pleaded facts in
the complaint and draw[s] all reasonable inferences in favor of
the plaintiffs."  <u>Gargano v. Liberty International Underwriters,</u>
<u>Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009).   "The general rules of
pleading require 'a short and plain statement of the claim

showing that the pleader is entitled to relief.'"   Id.   "This
short and plain statement need only 'give the defendant[s] fair
notice of what the . . . claim is and the grounds upon which it
rests.'"   Id.

"To survive a motion to dismiss, the complaint must allege
'a plausible entitlement to relief.'"   Fitzgerald v. Harris, 549
F.3d 46, 52 (1st Cir. 2008).   While "detailed factual
allegations" are not required, "a plaintiff's obligation to
provide the 'grounds' of his 'entitlement for relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."   Bell Atlantic
v. Twombly, 550 U.S. 554, 555 (2007); Maldonado v. Fontanes, 563
F.3d 263, 266 (1st Cir. 2009); Thomas v. Rhode Island, 542 F.3d
944, 948 (1st Cir. 2008).   Additionally, "a well-pleaded
complaint may succeed even if it strikes" a court "that actual
proof of those facts is improbable."   Twombly, 550 U.S. at 556.

As to a motion to amend, it is well settled that futility
constitutes an adequate basis to deny amendment.   See Universal
Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418
(1st Cir. 2007); Maine State Building and Construction Trade
Council, AFL CIO v. United States Department of Labor, 359 F.3d
14, 19 (1st Cir. 2004).   "An amendment is futile if it could not
withstand a Rule 12(b)(6) motion to dismiss."   Menard v. CSX
Transportation, Inc., 840 F.Supp.2d 421, 427 (D.Mass. 2012).

FACTUAL BACKGROUND[4]

I.  MOTION TO DISMISS (DOCKET ENTRY # 14)

Throughout the relevant time period, plaintiff was an inmate in the Federal Bureau of Prisons.  The Federal Prison Camp-Canaan ("Canaan"), where plaintiff served his sentence, is located in Waymart, Pennsylvania.  (Docket Entry # 3).

On June 26, 2010, plaintiff "suffered acute pulmonary edema and congestive heart failure."  (Docket Entry # 1).  Plaintiff, "a former doctor, knew he needed oxygen and pleaded for it."  (Docket Entry # 1).  Plaintiff's "condition was known, and the oxygen was available," but "the staff [at Canaan] refused to administer the oxygen to him."  (Docket Entry # 1).

After filing the original complaint (Docket Entry # 1) on May 4, 2012, plaintiff filed the supplement (Docket Entry # 3) on May 30, 2012.  The supplement includes an administrative claim dated April 21, 2011, that plaintiff submitted to the Northeast Region of the Federal Bureau of Prisons which, in light of plaintiff's pro se status, this court construes as elucidating the facts at the case in bar.

The incident occurred at 3:00 a.m., "6 weeks post massive anterior wall myocardial infarction with cardiogenic shock and an emergency coronary artery bypass graft."  (Docket Entry # 3).

---

[4]  The factual background is taken from the operative complaint, i.e., the original complaint, the supplement and the amended complaint (Docket Entry ## 1, 3 & 11).

Canaan "does not have any medical staff on site from 11:00 p.m. to 6:00 a.m. everyday." (Docket Entry # 3). While plaintiff awaited the arrival of an ambulance, correctional officers "stood there smiling and saying 'we are not allowed to give you oxygen.'" (Docket Entry # 3). The correctional officers "had cell phones and were in communication with central command" at the time plaintiff requested oxygen. (Docket Entry # 3). Plaintiff was "unable to breath and lost consciousness" due to "[t]he failure to provide oxygen." (Docket Entry # 3). "When the ambulance arrived, it was reported that the officers appeared to intentionally take a lot of time in placing [plaintiff] in the ambulance." (Docket Entry # 3).

When plaintiff arrived at Wayne Memorial Hospital, "[t]here was great concern by the physicians that the prolonged period of hypoxemia may have precipated [sic] another heart attack and/or extended the damage from the heart attack a few weeks prior." (Docket Entry # 3). "[A]n 80%-90% blockage in the right carotid artery" and "the diminished oxygen level" also created "concern" that "a possible stroke could have occurred." (Docket Entry # 3). While being treated, plaintiff "made known" to the "medical staff at Wayne Memorial Hospital" that he was "concern[ed] that there was no oxygen available [at Canaan]" and that "[i]t would be dangerous and unreasonable to send a heart patient in [plaintiff's] condition back to [Canaan]." (Docket Entry # 3).

6

Plaintiff "was told oxygen would be available."  (Docket Entry # 3).  Specifically, plaintiff "was told by the [Physician's Assistant at Wayne Memorial Hospital] that she and the attending physician had received assurances [from the staff at Canaan] that oxygen would be always available."  (Docket Entry # 3).

Upon returning to Canaan, plaintiff was told by "the Camp Administrator" that "only medical [staff] could give oxygen." (Docket Entry # 3).  During the period that no medical staff was on site, "[a]n ambulance could be called" if oxygen was needed. (Docket Entry # 3).

Plaintiff "filed a grievance with the Warden" alleging that "[t]he staff at Canaan had lied to [him] and the physicians and staff at [Wayne Memorial] hospital."  (Docket Entry # 3).  In reply to the grievance, the Warden stated, "In regard to your questions as to why the Correctional Officers did not give you oxygen when you were lying on the sidewalk, Correctional Officers are trained as First Responders.  As a First Responder, they are not trained in the administration of oxygen.  Oxygen can only be administered by properly trained Medical staff in an emergency situation or as prescribed by a Doctor."  (Docket Entry # 3).  Plaintiff maintains that he "sustained severe physical harm and was placed in severe jeopardy for his life and [sustained] severe emotional distress as a result of

correctional officers failure to provide basic emergency care."
(Docket Entry # 3).

"[F]ollowing [plaintiff's] heart attack and bypass surgery,
[plaintiff] had many complications" while recovering at Canaan.
(Docket Entry # 3).  "Dr. [Daniel] Holloway [a doctor at Canaan]
had requested [plaintiff] be transferred to a federal medical
center.  The request was denied by Central."  (Docket Entry #
3).

Plaintiff was "repeatedly denied proper cardiac diet" by
correctional officers at Canaan and "staff practically assaulted
[plaintiff's] family member."[5]  (Docket Entry # 3).  Plaintiff
was "prescribed two (2) Percocet 3-4 times a day" for "severe
pain from the sternotomy" by his cardiac surgeon.  (Docket Entry
# 3).  "The medical staff prescribed NSAIDS (ibuprofen) which
gave [plaintiff] an irregular heartbeat."  (Docket Entry # 3)
"[The medical staff] then had [plaintiff] take naproxen."
(Docket Entry # 3).  "NSAIDS are contraindicated in the setting
of coronary artery bypass as they can precipitate 'acute

---

[5]  In particular, on September 6, 2010, a correctional officer
approached plaintiff's visitor because she was in an
unauthorized area.  "Visitors are aware they are not permitted
in this area.  The officer did explain to [plaintiff's] visitor
that she was in an area that visitors are not permitted to be in
and hat[sic] her visiting privileges could be suspended.
[Plaintiff's] visitor was then escorted to Camp Inmate Visiting
Area for in-processing into Camp Visiting Area."  (Docket Entry
# 3).

pulmonary edema' and 'congestive heart failure.'"   (Docket Entry
# 3).

## DISCUSSION

Defendants move to dismiss all four claims presented in the
operative complaint (Docket Entry ## 1, 3 & 11).   Defendants
argue that:   (1) the two claims brought under Bivens fail
because such claims are not actionable against federal agencies;
(2) the claim regarding post-operative treatment of pain brought
under the FTCA is a medical malpractice claim and plaintiff
failed to file a certificate of merit as required by
Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3"); and
(3) plaintiff fails to state a claim for negligence.

A.   Bivens Claims

Plaintiff alleges two claims under Bivens:   (1) deliberate
indifference to medical care (Docket Entry # 11, ¶¶ 1, 2 & 4);
and (2) retaliation (Docket Entry # 11, ¶¶ 1 & 3).   The
operative complaint names only the Department of Justice and the
Federal Bureau of Prions as defendants.   (Docket Entry # 1).
Naming only a federal agency as a defendant is a ground for
dismissal of a Bivens claim.   See F.D.I.C. v. Meyer, 510 U.S.
471, 486 (1994).

"The Bivens doctrine allows a plaintiff to vindicate
certain constitutionally protected rights through a private
cause of action for damages against federal officials in their

individual capacities." Chiang v. Skeirik, 582 F.3d 238, 243 (1st Cir. 2009); see generally Soto-Torres v. Fraticelli, 654 F.3d 153, 157-158 (1st Cir. 2011). A plaintiff may seek vindication for violations of his First, Fourth, Fifth, Sixth and/or Eighth Amendment rights through a Bivens claim. See Farmer v. Brennan, 511 U.S. 825, 839, (1994) (Eighth Amendment); David v. Passman, 442 U.S. 228, (1979) (Due Process Clause of Fifth Amendment); Bivens, 403 U.S. 388 (1971) (Fourth Amendment); Toro v. Gil, 110 F.Supp.2d 28 (D.P.R. 2000) (First Amendment); Edmond v. U.S. Postal Service General Counsel, 949 F.2d 415 (D.C.Cir. 1991) (Sixth Amendment).

A Bivens claim may not be made against a federal agency. Meyer, 510 U.S. at 486 (holding "[a]n extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens itself"); Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003) (restating Supreme Court's refusal to recognize a Bivens remedy against federal agencies). A "claimant who seeks relief under Bivens must prove the violation of constitutional right by a federal agent acting under the color of federal law." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008); McCloskey v. Mueller, 446 F.3d 262, 271-72 (1st Cir. 2006) ("Bivens doctrine allows constitutional claims against federal officials, in their individual capacities for actions taken under color of federal law"). As explained by the Court in Meyers:

> [T]he purpose of Bivens is to deter *the officer*.
> ("Because the Bivens remedy is recoverable against
> individuals, it is more effective deterrent than the
> FTCA remedy against the United States").  If [the
> Court] were to imply a damages action directly against
> federal agencies, thereby permitting claimants to
> bypass qualified immunity, there would be no reason
> for aggrieved parties to bring damages actions against
> individual officers.

Id at 485 (internal citations omitted) (emphasis in the

original).  "[P]laintiff must state a claim for direct rather

than vicarious liability; respondeat superior is not a viable

theory of Bivens liability."  Ruiz Rivera v. Riley, 209 F.3d 24,

28 (1st Cir. 2000); see Ashcroft v. Iqbal 556 U.S. 662, 676

(2009) ("[g]overnment officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory or

respondeat superior").

The original complaint names the United States Department

of Justice and the Federal Bureau of Prisons.  The supplement

and the motion to amend retain the same caption as the original

complaint, all of which name the Department of Justice and the

Federal Bureau of Prisons.  The operative complaint (Docket

Entry ## 1, 3 & 11) therefore does not name or identify any

other federal official as a defendant.  Aside from the two

parties named as defendants, plaintiff mentions seven

individuals by name and 19 by occupation or title in documents

submitted as part of the administrative proceedings.  (Docket

Entry # 3).  Plaintiff does not identify these individuals as a

"defendant."  He also fails to allege that any of the
individuals mentioned (Docket Entry # 3) were deliberately
indifferent to the medical care he received or that any of the
individuals retaliated against him.  Plaintiff therefore fails
to state a claim against a federal official in his or her
individual capacity.

The pending motion to amend (Docket Entry # 19) seeks to
cure this deficiency by adding as defendants:  (1) Attorney
General Eric Holder; (2) Director of Federal Prisons Charles E.
Samuelson; and (3) Warden Ronnie R. Holt.  During oral argument,
defendant opposed the motion to amend based on futility.  The
original complaint (Docket Entry # 1), the supplement (Docket
Entry # 3) and the amended complaint (Docket Entry # 11) do not
tie these individuals to the facts alleged.  Plaintiff's failure
to state a claim against a federal official in his or her
individual capacity renders the motion to amend the complaint
(Docket Entry # 19) futile.

B.   FTCA

The FTCA gives federal district courts exclusive
jurisdiction over claims against the United States for "injury
or loss of property, or personal injury or death caused by the
negligent or wrongful act or omission of federal employees
acting within the scope of their employment."  28 U.S.C. §
1346(b)(1).  The FTCA "was designed primarily to remove the

sovereign immunity of the United States from suits in tort."

Richards v. United States, 369 U.S. 1, 6 (1962).

> [T]o be actionable under § 1346(b), a claim must
> allege, *inter alia*, that the United States would be
> liable to the claimant as a private person . . . in
> accordance with the law of the place where the act or
> omission occurred . . . [the Court has] consistently
> held that § 1346(b)'s reference to the law of the
> place means law of the State-the source of substantive
> liability under the FTCA.

Meyer, 510 U.S. at 477-78 (internal quotation marks omitted)

(emphasis in the original); see McCloskey v. Mueller, 446 F.3d

262, 266 (1st Cir. 2006) (explaining substantive state law

applies in federal tort claim).  The FTCA, however:

> is itself subject to several exceptions . . . the most
> expansive of these is the "discretionary function"
> exception, which precludes government liability for claims
> based upon "the exercise or performance or the failure to
> exercise or perform a discretionary function or duty on the
> part of a federal agency or an employee of the Government,
> whether or not the discretion involved be abused."

Santana-Rosa v. United States, 335 F.3d 39, 42 (1st Cir. 2003)

(quoting 28 U.S.C. § 2680(a)).

Here, plaintiff brings two claims under the FTCA:  (1)

negligence; and (2) medical malpractice.  Both claims are based

on acts or omissions that occurred in Pennsylvania.

Pennsylvania law therefore governs both claims.  See 28 U.S.C. §

1346(b)(1); Torres-Lazarini v. United States, 523 F.3d 69, 72

(1st Cir. 2008) ("law of Puerto Rico, where the alleged

malpractice occurred, provides the standard of liability in this FTCA action").

1.  Medical Malpractice

Plaintiff alleges that medical staff at Canaan prescribed medication that was contraindicated in the setting of coronary artery bypass which can precipitate acute pulmonary edema and congestive heart failure.  The allegation presents a medical malpractice claim.  See Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003).  As explained by the court in Toogood, "medical malpractice can be broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-produced conduct arising from the rendition of professional medical services."  Id.

When filing a complaint for medical malpractice, Pennsylvania law requires "the attorney for the plaintiff, or the plaintiff if not represented, [to] file with the complaint or within sixty days after the filing of the complaint, a certificate of merit."  Pa. R. Civ. P. 1042.3(a).  Defendants move to dismiss the medical malpractice claim for failure to comply with Rule 1042.3.

Rule 1042.3 constitutes "substantive state law that must be applied by the federal district courts.  Under Pennsylvania law, plaintiff's failure to comply with the [certificate of merit]

14

requirement entitles the defendant to direct the prothonotary to enter a judgment of *non pros* against the plaintiff.  See Pa. R. Civ. P. 1042.6."  <u>Booker v. United States</u>, 2010 WL 548411, at *426-47 (3rd Cir. Feb. 18, 2010) (unpublished) (emphasis in the original); <u>see</u> <u>Smith v. United States</u>, 2012 WL 3245347, at *121 (3rd Cir. Aug. 10, 2012) (unpublished); <u>Stroud v. Abington Memorial Hosp.</u>, 546 F.Supp.2d 238, 248 (E.D.Pa 2008) ("federal courts in Pennsylvania have uniformly held that the [certificate of merit] requirement is a substantive rule of law") (internal citations omitted); <u>see also</u> <u>Sabot v. Federal Bureau of Prison</u>, 2007 WL 2325823, at *5 (1st Cir. Aug. 16, 2007) (upholding district court's decision to dismiss complaint for failure to comply with state law's precondition to suit that it deemed substantive).[6]  Failure to file the certificate of merit therefore provides a basis to dismiss a medical malpractice claim.  See <u>Womer v. Hilliker</u> 589 Pa. 256, 266-67 (2006) ("the absence from the record of a certificate of merit signals . . .

---

[6]  Rule 32.1, Fed. R. App. Pro., allows citations of unpublished opinions issued on or after January 1, 2007.  <u>See</u> <u>also</u> First Circuit Rule 32.1.0; Third Circuit Internal Operating Procedure 5.7.  ("The court by tradition does not cite to its not precedential opinions as authority.  Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."); <u>United States v. DeRewal</u>, 10 F.3d 100, 102 n.1 (3rd Cir. 1993) ("We traditionally do not regard our unpublished decisions as having precedential value").

that nothing further should transpire in the action, except for the lawsuit's termination").

In order to survive the motion to dismiss, plaintiff belatedly filed the motion for leave to file the certificate of merit.  (Docket Entry # 25).  Plaintiff, however, did not file the certificate of merit in the time allowed by statute.  "In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard . . . the plaintiff . . . shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit." Pa. R. Civ. P. 1042.3(a).  Plaintiff filed the motion to amend four months after the the time allowed by statute.  The motion is futile because the certificate of merit submitted does not "substantially compl[y]" with Pennsylvania law which would be a ground for dismissal.  Womer, 589 Pa. at 271.  The Pennsylvania Supreme Court "has now made it clear that the sixty-day deadline for filing a [certificate of merit] will be strictly construed and not lightly excused, while at the same time allowing a late-filing plaintiff to set out certain equitable considerations as would constitute a reasonable explanation or legitimate excuse for noncompliance . . .." Stroud, 546 F.Supp.2d at 250 (internal quotation marks omitted).

Here, plaintiff simply missed the statutory deadline. Thus, assuming equitable considerations apply, plaintiff fails

to provide a legitimate or reasonable excuse for noncompliance.
Rule 1042.3 also includes a provision that allows a court to
grant an extension of the time period "upon good cause shown."
It reads that, "The court, upon good cause shown, shall extend
the time for filing a certificate of merit for a period not to
exceed sixty days.  The motion to extend the time for filing a
certificate of merit must be filed on or before the filing date
that plaintiff seeks to extend."   Pa. R. Civ. P. 1042.3(d).

In the case at bar, plaintiff filed the original complaint
on May 4, 2012.  Defendants filed the motion to dismiss on
November 23, 2012.  Plaintiff filed the motion for leave to file
the certificate on February 14, 2013, nine months after
plaintiff filed the original complaint and three months after
defendant filed the motion to dismiss.  (Docket Entry ## 14 &
25).  Plaintiff therefore did not file a motion to extend the 60
day time period "on or before the filing date that the plaintiff
seeks to extend."[7]  Pa. R. Civ. P. 1042.3(d).

Assuming the alternative that federal procedural law
governs the time period to seek an extension, plaintiff fails to
show "excusable neglect" within the meaning of Rule 6(b), Fed.

---

[7]   Pennsylvania law provides that "an untimely [certificate of
merit] can suffice to prevent this entry of judgment if filed
*prior* to the defendant's motion [to dismiss]."  Cuevas v. United
States, 2011 WL 1303447, at *145 (3rd Cir. Apr. 6, 2011).  As
noted, plaintiff filed the certificate after defendants filed to
motion to dismiss.

R. Civ. P.   Indeed, plaintiff never requested an extension to file the certificate.   Even construing the motion to amend as a request for an extension of time, it is too late.   Plaintiff did not file the motion to amend within 60 days of filing the complaint (July 3, 2012).   Failure to file a certificate of merit is "no procedural misstep . . . it [is] instead, a wholesale failure to take any of the actions that one of our rules require."   Womer, 589 Pa. at 271.   Finally, although plaintiff filed the complaint pro se, "a pro se litigant's ignorance of or mistaken assumptions about the requirements of Rule 1042.3 cannot serve as a reasonable excuse."   Perez v. Griffin, 2008 WL 5351829, at *75 (3rd Cir. Dec. 23, 2008); accord Kendra Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d 216, 225 n.7 (1st Cir. 2003) (citing principle that "'pro se status does not insulate a party from complying with procedural and substantive law'" and finding that pro se plaintiff's failure to develop legal argument resulted in waiver).   Plaintiff's certificate of merit does not comply with Pennsylvania law and there is no good cause or excusable neglect to justify the delay in filing.   The motion to amend is therefore futile and thus denied.

2.   Negligence[8]

---

[8]   Defendant construes these facts as a negligence claim.   Out of an abundance of caution, this court will address the claim even

The FTCA negligence claim is based on correctional officers' refusal to administer oxygen to plaintiff on June 26, 2010.  Plaintiff was told by correctional officers on the morning of the incident that they were not authorized to administer oxygen to him.  Upon returning to Canaan, the Camp Administrator again told plaintiff that oxygen would not be available on site from 11:00 p.m. until 6 a.m. every day.

"[A] person can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee."  U.S. v. Muniz, 374 U.S. 150, 150 (1963).  Defendant seeks dismissal of the FTCA claim based on the discretionary function exception.  As explained, the discretionary function exception precludes government liability for claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty.  When the discretionary function exception applies, "the government is completely immune from suit, and the claim must be dismissed for lack of subject matter

---

though plaintiff's allegations of deliberate actions on the part of defendants and the foregoing individuals indicate that plaintiff intended to sue for deliberate constitutional violations as opposed to negligence under the FTCA.  See Webb v. United States, Bureau of Prisons, 2011 WL 1045097, at *4 (1st Cir. March 18, 2011).

jurisdiction." <u>Sanchez ex rel D.R.-S. v. United States</u>, 671 F.3d 86, 92 (1st Cir. 2012).

The analysis of whether the discretionary function exception applies:

> begins, naturally enough, with the question of whether the Government's allegedly actionable conduct was discretionary. <u>United States v. Gaubert</u>, 499 U.S. 315, 322 (1991); <u>see also</u> <u>Magee v. United States</u>, 121 F.3d 1, 4 (1st Cir. 1997). To demonstrate that its conduct was discretionary, the government need only show that there was "room for choice" in making the allegedly actionable decision or decisions. <u>Attallah v. United States</u>, 955 F.2d 776, 783 (1st Cir. 1992). If the challenged conduct is found to have been discretionary, a court must then assess whether the Government's actions were of the kind that the discretionary function exception was designed to shield—that is, whether the Government's acts were "susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325.

<u>Santana-Rosa</u>, 335 F.3d at 43.

Here, the room for choice exists in light of the broad terms that define the Bureau of Prisons duty to prisoners in its custody. "The Bureau of Prisons . . . shall . . . provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . .." 18 U.S.C. § 4042(a)(2) ("Section 4042"); <u>see</u> <u>Santana-Rosa</u>, 335 F.3d at 44 (quoting section 4042 and noting, along with another provision, that they "vest the BOP with the task of providing for the protection and safekeeping of prisoners in very general terms").

In determining how to best care for prisoners, prison officials at Canaan chose to staff medical personnel on site from 6 a.m. until 11:00 p.m. every day.  When members of the medical staff were not on site, prison officials chose a course of action that requires an ambulance to be summoned in the event of a medical emergency.

Turning to whether the choices made by prison officials were susceptible to policy analysis, when "choices are informed by a need to balance concerns about a myriad of factors such as efficiency, safety, aesthetics, and cost . . . those choices are readily susceptible to policy analysis."  Fothergill v. United States, 566 F.3d 248, 253 (1st Cir. 2009).  The decision by prison officials to provide medical staff on site during designated hours, to limit First Aid training of correctional officers and to use an ambulance at times when medical staff is not present reflect efficiency, safety and cost concerns that are readily susceptible to policy analysis.  Accordingly, the decisions made by prison officials with respect to the availability of oxygen fall within the discretionary function exception.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[9] that the motion to dismiss (Docket Entry # 14) be **ALLOWED**.  The motion to amend the complaint (Docket Entry # 19) is **DENIED** and the motion for leave to file the certificate of merit (Docket Entry # 25) is **DENIED.**


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[9]  Any objection to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of the Report and Recommendation to which the objection is made and the basis for such objection.  See Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.